[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Pappas,* Slip Opinion No. 2014-Ohio-3676.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3676

DISCIPLINARY COUNSEL *v.* PAPPAS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Pappas,* Slip Opinion No. 2014-Ohio-3676.]**

*Attorneys—Misconduct—Felony conviction for making false statement to federal authorities—Affidavit known to be false filed in court of law—False statement to disciplinary authority—Violation of multiple Rules of Professional Conduct—Two-year suspension with no credit for time served under interim felony suspension.*

(No. 2013-1625—Submitted December 11, 2013—Decided September 4, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-089.

_____

**Per Curiam**.

**{¶ 1}** Respondent, George Zane Pappas of Urbana, Ohio, Attorney Registration No. 0033674, was admitted to the practice of law in Ohio in 1986. In December 2007, we suspended Pappas's license for failing to register but

reinstated him the following day. *In re Attorney Registration Suspension of Pappas,* 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305; *In re Pappas,* 116 Ohio St.3d 1498, 2008-Ohio-290, 880 N.E.2d 97. In November 2011, we suspended him again for failing to register. *In re Attorney Registration Suspension of Pappas,* 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310. We sanctioned him in December 2011 for failure to comply with the continuing-legal-education requirements of Gov.Bar R. X. *In re Pappas,* 130 Ohio St.3d 1505, 2011-Ohio-6770, 959 N.E.2d 2.

**{¶ 2}** On August 22, 2012, we imposed an interim felony suspension on him pursuant to Gov.Bar R. V(5)(A)(4) after receiving notice that he had been convicted of making a false statement to federal authorities. *In re Pappas,* 132 Ohio St.3d 1497, 2012-Ohio-3775, 973 N.E.2d 266. The 2011 and 2012 suspensions remain in effect.

**{¶ 3}** In December 2012, relator, disciplinary counsel, charged Pappas with violations of the Disciplinary Rules of the Code of Professional Responsibility based on his criminal conviction and for allegedly making the same false statement to a court and to relator.[1] Relator and Pappas entered into a comprehensive list of stipulations of fact and misconduct, but they could not agree on the appropriate sanction. After a hearing, a three-member panel of the Board of Commissioners on Grievances and Discipline determined that the parties' stipulations were supported by clear and convincing evidence and recommended that Pappas serve a two-year suspension from the practice of law with credit for time served under his interim felony suspension. The board adopted the panel's report in its entirety, and no party has filed objections to the board's recommendation.

---

[1] Relator charged Pappas with misconduct under the applicable Disciplinary Rules for acts occurring before February 1, 2007, the effective date of the Rules of Professional Conduct, which superseded the Disciplinary Rules of the Code of Professional Responsibility.

**{¶ 4}** Upon our review of the record, we accept the board's findings of fact and misconduct and agree that a two-year suspension is the appropriate sanction in this case. However, we do not credit Pappas with the time he has served under this interim felony suspension.

**Misconduct**

**{¶ 5}** Between 1995 and 2010, Pappas was a sole practitioner in Urbana, focusing primarily on criminal-defense work. In February 2004, Pappas's law-school classmate and long-time best friend, Aristotle Matsa, was in the midst of a divorce. According to Pappas, Matsa told him that his ex-wife was attempting to "take everything and destroy him." Matsa therefore requested that Pappas falsely claim ownership of Matsa's Columbus law firm in order to prevent Matsa's ex-wife from obtaining firm records. Pappas agreed and executed an affidavit, which was filed in Matsa's divorce case in an effort to quash a subpoena. In the affidavit, Pappas averred:

2. I am the sole shareholder and principal in charge of the Law Offices of Aristotle R. Matsa, A Legal Professional Association, which [is] referred to by some as the Law Offices of Aristotle R. Matsa, and have been such from the date of the creation of this entity through the present.

3. It has recently come to my attention that someone has attempted to subpoena banking records relating to the entity referred to in item 2 above. I believe that any such attempt is in clear violation of my rights, and the attorney client privilege, as well as other statutory and common law rights.

4. The attempt to delve into my/my entity's banking records is intended to intimidate and harass me and my clients. Any release of such records would cause my clients, me, and my

entity irreparable harm. It would obviously be a violation of privacy as well given that I have no interest in the above captioned case.

5. As Mr. Golden and his firm well know, I do represent the Plaintiff [Matsa] in another civil case and it is my belief that this action by Mr. Golden is intended to damage, harass, and intimidate me and my practice; and to attempt to gain privileged information that his firm might use in an unrelated lawsuit wherein I represent the Plaintiff and others.

Despite these averments, Pappas had in fact never had any ownership interest in Matsa's law firm.

{¶ 6} Two months later, in April 2004, relator sent Pappas a letter of inquiry requesting information regarding his alleged acquisition of Matsa's law practice. Pappas responded in writing and falsely stated that he had been the sole and/or primary shareholder of Matsa's law firm since 1987. Pappas further stated that in "an abundance of caution," he was changing the name to the "Law Offices of George Z. Pappas, L.P.A." Based upon Pappas's false representations, relator terminated its investigation.

{¶ 7} Apparently unbeknownst to Pappas, Matsa had been carrying out a tax-fraud scheme for nearly three decades. According to the parties' stipulations, Matsa had set up a complex web of shell C-corporations, trusts, limited-liability companies, churches, and other nominee entities purportedly owned or associated with others. Matsa's criminal scheme led to a federal investigation by the Internal Revenue Service ("IRS") and the United States Justice Department for alleged tax fraud, money laundering, and conspiracy to obstruct justice.

{¶ 8} As part of that investigation, IRS agents interviewed Pappas in August 2006. During that interview, Pappas again falsely stated that he was the

owner of Matsa's law firm. The IRS then served Pappas with two subpoenas—one for his personal appearance before the federal grand jury in September 2006 and the other as the custodian of records for a long list of entities, including Matsa's law firm. On September 19, 2006, Pappas appeared before the grand jury and falsely stated, under oath, that he was the owner of Matsa's Columbus law firm. Immediately following that testimony, Pappas sent a letter to the Department of Justice stating, again, that he was the owner of Matsa's law practice, that he had always been the sole shareholder of the firm, and that many of the entities listed on the subpoena were not associated with Matsa but were clients of Pappas's law practice.

{¶ 9} Within months after sending the September 2006 letter, Pappas agreed to take responsibility for his lies and began cooperating with federal authorities. The federal prosecutor later stated that Pappas's cooperation proved significant in obtaining a search warrant of Matsa's law office in 2007 and in the government's investigation of Matsa. On December 10, 2009, Pappas signed a confidential plea agreement with the federal government, and in February 2010, he waived his right to indictment and pled guilty to a charge of making a false statement under 18 U.S.C. 1001, based on the false statements he had made in the September 2006 letter to the Department of Justice. Pappas reported his misconduct to relator and closed his Urbana law office. At some point thereafter, he began working as a part-time line cook at a restaurant chain, where he continued to work at the time of his disciplinary hearing.

{¶ 10} Matsa's criminal trial did not occur until April 2012. Pappas met with government agents and investigators numerous times before trial, and he testified against his former friend in pretrial hearings and at trial. Pappas's cooperation was described as instrumental in assisting the prosecution, and Matsa was ultimately convicted of multiple felonies and sentenced to 85 months in prison.

**{¶ 11}** In June 2012, a federal judge convicted Pappas of making a false statement based on his 2010 guilty plea and sentenced him to probation for one year, including four months of home confinement, along with a $100 fine and a $100 assessment. The parties here stipulated, and the board found, that Pappas did not financially benefit from his false representations regarding his ownership of Matsa's law firm, and no evidence established that Pappas was even aware of Matsa's illegal activity. Indeed, in its sentencing memorandum in Pappas's federal case, the government stated the following:

> Matsa's aim was to obstruct the fact that he (Matsa) controlled all the entities and was the mastermind behind the fraudulent tax filings, not only of the corporate law firm, but of the other corporate and trust entities which he controlled. Pappas' aim was to conceal his prior lie to the divorce court and to the Ohio Supreme Court and to again help his best friend out of a jam he perceived to have been created by Matsa's ex-wife. Pappas did not financially benefit from his conduct. In fact, there is no evidence that Pappas knew of Matsa's illegal conduct involving the clients, the corporations or the trusts.

The district court judge agreed, stating at Pappas's sentencing hearing that Pappas was essentially "taken advantage of by a friend who was involved in a much more aggravated and criminal scheme than what [Pappas] involved himself with."

**{¶ 12}** Based on these facts, we agree with the board's findings of misconduct in this case. In count one, Pappas's false statements to federal authorities, which led to his criminal conviction, violated DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting a lawyer from engaging in

6

conduct that is prejudicial to the administration of justice), and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). In count two, Pappas's false statements in response to relator's 2004 letter of inquiry violated DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6). And in count three, Pappas's execution of the false affidavit in Matsa's 2004 divorce proceeding violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 7-102(A)(4) (prohibiting a lawyer from knowingly using perjured testimony or false evidence in his or her representation of a client), and 7-102(A)(5) (prohibiting a lawyer from knowingly making a false statement of fact in his or her representation of a client).

**Sanction**

{¶ 13} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. However, because each disciplinary case is unique, we are not limited to the factors specified in BCGD Proc.Reg. 10(B) and may take into account all relevant factors in determining which sanction to impose.

*Aggravating and mitigating factors*

{¶ 14} In aggravation, the board found that Pappas acted with a dishonest or selfish motive—not for financial gain, but to protect his friend—and that he engaged in a pattern of misconduct. *See* BCGD Proc.Reg. 10(B)(1)(b) and(c). We concur, and also note that Pappas has prior discipline for failing to register as an attorney. *See* BCGD Proc.Reg. 10(B)(1)(a).

{¶ 15} In mitigation, the board determined that Pappas (1) eventually made a good-faith effort to rectify the consequences of his misconduct, (2) cooperated in the disciplinary investigation, after making the initial misrepresentation in 2004, (3) has a "reputation for good character" and a history as a "sensitive criminal attorney serving a constituency who benefits from his services," and (4) has been subject to other penalties, including successful completion of a term of home confinement and probation and payment of a fine and assessment. *See* BCGD Proc.Reg. 10(B)(2)(c), (d), (e), and (f). The board also determined that Pappas had displayed "immense remorse," acknowledged the wrongful nature of his misconduct, and had not benefited financially in any way from his misconduct.

{¶ 16} We agree that these mitigating factors are present here, and we defer to the panel's credibility determinations regarding Pappas's level of remorse and his reputation. *See Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24 ("Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand").

*Applicable precedent*

{¶ 17} The parties submitted a number of cases to the board involving attorneys whose misconduct resulted in felony convictions, with sanctions ranging from a two-year suspension, with credit for time served under the interim felony suspension, to an indefinite suspension without credit for time served. *See, e.g., Disciplinary Counsel v. Blaszak*, 104 Ohio St.3d 330, 2004-Ohio-6593, 819 N.E.2d 689 (two-year suspension, with credit for time served, for an attorney convicted of offering to sell testimony in exchange for $500,000); *Disciplinary Counsel v. Margolis*, 114 Ohio St.3d 165, 2007-Ohio-3607, 870 N.E.2d 1158 (two-year suspension, without credit for time served, for an attorney convicted of federal antitrust violations that affected between $37.5 million and $100 million

in bid rigging); *Disciplinary Counsel v. Bennett*, 124 Ohio St.3d 314, 2010-Ohio-313, 921 N.E.2d 1064 (indefinite suspension, with credit for time served, for an attorney convicted of illegally structuring financial transactions in an amount of $124,300 to evade federal currency-transaction reporting requirements); *Disciplinary Counsel v. Smith*, 128 Ohio St.3d 390, 2011-Ohio-957, 944 N.E.2d 1166 (indefinite suspension, with credit for time served, for an attorney convicted of making false tax returns, conspiring to defraud the IRS, and corruptly endeavoring to obstruct and impede an IRS investigation); *Disciplinary Counsel v. Camera*, 68 Ohio St.3d 478, 628 N.E.2d 1353 (1994) (indefinite suspension, without credit for time served, for an attorney convicted of perjury for signing a false affidavit at a sheriff's sale; the affidavit stated that the attorney was not acting on behalf of the client whose forfeited property was being sold due to her conviction in a criminal matter, but the attorney was in fact acting on that client's behalf).

{¶ 18} The board found several distinctions between Pappas's conduct and the conduct of the attorneys in these cases. For example, the board determined that Pappas's misconduct—"telling the same lie on three separate occasions"—was less severe than the misconduct in *Blaszak* and *Margolis* and not as frequent or as complex as the misconduct in *Bennett* and *Smith*. Similarly, the board noted that unlike the attorneys in *Blaszak*, *Bennett*, and *Smith*, Pappas was not motivated by any personal financial gain, and in contrast to the attorney in *Margolis*, Pappas showed "immense remorse" and took responsibility for his actions. As to *Camera*, the board concluded that because this court's opinion did not discuss aggravating and mitigating factors, the board could not determine whether the facts in Pappas's case warranted the same sanction as that imposed in *Camera*.

{¶ 19} The board found that its recommended sanction of a two-year suspension was supported by *Disciplinary Counsel v. Derryberry*, 54 Ohio St.3d

107, 561 N.E.2d 926 (1990). In that case, the attorney was convicted of perjury after testifying that, while serving as a bankruptcy trustee, he had not received certain creditor contributions given to a third party. But in fact, the third party had given the trustee-attorney at least one creditor's check, apparently as part of a $27,500 personal loan. *Id*. at 108. In mitigation, the board had stressed the attorney's character evidence, his 17 years' experience as a trustee in bankruptcy actions, his active civic participation, and his near-completion of his criminal sentence of three years' probation. *Id.* at 108. This court accepted the board's recommended sanction of a two-year suspension with credit for time served under the interim felony suspension. *Id.* at 109.

{¶ 20} Based on this precedent, and its belief that the "significant number of mitigating factors" in Pappas's case were of "overriding importance," the board determined that "[b]eyond any term suspension there is no valid reason to believe that the public needs to be protected from [Pappas's] practicing law." Accordingly, it recommended that Pappas serve a two-year suspension, with credit for time served during the interim felony suspension.

{¶ 21} We agree with the board that the relevant precedent—especially *Derryberry*—supports a two-year suspension from the practice of law. Pappas's misconduct was not as egregious as the attorneys in *Smith* or *Bennett*, who both engaged in complex schemes to defraud the IRS for personal gain and, as a result, received indefinite suspensions. Given the facts and significant mitigating factors here, a lesser sanction than in *Smith* or *Bennett* is warranted. However, Pappas was not only convicted of making a false statement to federal authorities, he also made the same false statement to a court and to relator. "Such conduct strikes at the very core of a lawyer's relationship with the court * * *. Respect for our profession is diminished with every deceitful act of a lawyer." *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995).

Accordingly, we decline to credit Pappas for the time served under his interim felony suspension.

**Conclusion**

**{¶ 22}** For the reasons explained above, George Zane Pappas is suspended from the practice of law in Ohio for two years, with no credit for time served under his interim felony suspension. Costs are taxed to Pappas.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents.

_____

**O'DONNELL, J., dissenting.**

**{¶ 23}** Respectfully, I dissent.

**{¶ 24}** The egregious conduct Pappas engaged in, particularly with respect to IRS agents, and his testimony before a grand jury and representations to the Department of Justice adversely affect the administration of justice.

**{¶ 25}** In this case, Pappas executed an affidavit, knowing that it would be filed in the Domestic Relations Division of the Franklin County Common Pleas Court, falsely claiming ownership in Aristotle Matsa's law practice in an effort to quash a subpoena. He made false representations to relator, he falsely told IRS agents that he was the owner of Matsa's law firm, he appeared before a federal grand jury and falsely testified under oath that he was the owner of Matsa's law firm, and after that testimony, he sent a letter to the Department of Justice, representing again that he was the owner of Matsa's law practice, that he had always been the sole shareholder of the firm, and that many of the entities listed on the subpoena were not associated with Matsa but were clients of his law practice. After signing a confidential plea agreement with federal authorities,

Pappas reported his misconduct to relator. A federal district court convicted him of making a false statement to federal authorities.

{¶ 26} In *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995), we stated that a

> lawyer who engages in a material misrepresentation to a court * * * violates, at a minimum, the lawyer's oath of office that he or she will not "knowingly * * * employ or countenance any * * * deception, falsehood, or fraud." Gov.Bar R. I(8)(A). Such conduct strikes at the very core of a lawyer's relationship with the court * * *. Respect for our profession is diminished with every deceitful act of a lawyer.

In this case, Pappas made repeated material misrepresentations.

{¶ 27} The board determined that he acted with a dishonest or selfish motive and that he engaged in a pattern of misconduct.

{¶ 28} In my view, a two-year suspension with no credit for time served under the interim felony suspension is not an appropriate sanction.

{¶ 29} I would disbar him from the practice of law.

_____

Donald M. Scheetz, Senior Assistant Disciplinary Counsel, for relator.

Kegler Brown Hill & Ritter, Geoffrey Stern and Rasheeda Khan, for respondent.

_____