**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Wilson*, **Slip Opinion No. 2020-Ohio-3050.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3050

DISCIPLINARY COUNSEL *v*. WILSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Wilson*, Slip Opinion No. 2020-Ohio-3050.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to promptly deliver funds or other property that a client or a third party is entitled to receive—Indefinite suspension.*

(No. 2019-1720—Submitted January 29, 2020—Decided May 27, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-009.

_____

**Per Curiam.**

{¶ 1} Respondent, Jared Lee Wilson, of Ravenna, Ohio, Attorney Registration No. 0083672, was admitted to the practice of law in Ohio in 2008. We suspended his license on November 1, 2013, for his failure to timely register for the 2013-2015 attorney-registration biennium and reinstated him to the

practice of law five days later. *In re Attorney Registration Suspension of Wilson*, 136 Ohio St.3d 1544, 2013-Ohio-4827, 996 N.E.2d 973, *reinstatement granted*, 137 Ohio St.3d 1446, 2013-Ohio-5720, 999 N.E.2d 699. He voluntarily placed his license on inactive status on January 11, 2017. On December 7, 2017, we suspended his license on an interim basis after receiving notice that he had been convicted of a felony; that suspension remains in effect. *See In re Wilson*, 152 Ohio St.3d 1229, 2017-Ohio-8858, 95 N.E.3d 404.

{¶ 2} In a seven-count complaint filed on February 22, 2019, relator, disciplinary counsel, charged Wilson with multiple ethical violations arising from his fifth-degree felony conviction for telecommunications fraud and his handling of six separate client matters. Based on the stipulations of the parties and the evidence presented at a hearing before a three-member panel of the Board of Professional Conduct, the panel found that Wilson committed all but one of the alleged rule violations and recommended that we indefinitely suspend him from the practice of law with credit for the time he has served under the interim felony suspension, place certain conditions on his reinstatement, and require him to serve a period of monitored probation upon his reinstatement. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, with the exception that the board suggests that we wait until Wilson is reinstated to the practice of law to determine whether monitored probation is necessary.

{¶ 3} After independently reviewing the record, we adopt the board's findings of misconduct and recommended sanction.

**Stipulated Facts and Misconduct**

*Count One: Felony Conviction*

{¶ 4} Wilson employed a former client, K.P., as his secretary. During her employment, K.P. was romantically involved with another of Wilson's clients, K.R. Sometime after K.P. stopped working for Wilson, she called police to report

that K.R. had assaulted her. K.R. was arrested and charged with felony domestic violence because K.P. was pregnant at the time of the incident.

{¶ 5} After K.R.'s arrest, K.P. contacted Wilson and asked him how she could ensure that K.R. did not go to prison. Wilson told her to recant her police statement and dodge any subpoena by leaving town. He explained that if she did not appear to testify, the charges would likely be reduced or dismissed. On October 8, 2016, K.P. asked K.R. for money to buy a plane ticket and told him that she would be forced to testify against him if he did not help her. Around that time, Wilson told K.R. that he would coordinate K.P.'s "disappearance" for a price.

{¶ 6} On October 17, K.R. called Wilson on a recorded line and asked him about the case. Wilson said, "I already gave you my opinion. I told you what had to be done. And I told you that I would help coordinate doing it." He went on to explain how he could make sure that the case would not be an issue for K.R. or K.P. Later in the call, K.R. said, "You also told me that it was going to cost me. What the f* * * do you mean by that?" Wilson replied, "It always costs, brother." He then suggested that K.R. meet him for lunch that day and bring cash with him.

{¶ 7} When they met, K.R. recorded the conversation. Wilson told K.R. that he would accept $1,000 that day but would need a total of $2,000 and that K.R. should not buy a plane ticket for K.P. because it would be too easy to trace. At the end of the lunch, K.R. gave Wilson $1,000. Wilson was arrested as he left the restaurant. He told police that he did not know that K.R. was bringing the money and that the cash was for attorney fees.

{¶ 8} In March 2017, Wilson pleaded guilty to telecommunications fraud and was sentenced to one year of community control.

{¶ 9} The board found that this conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging

in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

*Count Two: The Salzer Matter*

{¶ 10} In 2015, Richard and Jennifer Salzer retained Wilson to clear a lien on their real property. The Salzers paid Wilson $1,500 for his services, but he did not explain whether the basis of the fee was fixed or hourly or have them enter into a written fee agreement. He also failed to deposit their payment into his client trust account.

{¶ 11} After Wilson completed some work for the Salzers, they paid him an additional $1,500, but Wilson did not deposit that payment into his client trust account. The day after Wilson's 2016 indictment, he appeared in court with the Salzers for a status conference and the case was referred for mediation. Wilson never notified them of the date of the mediation conference. When they were unable to reach him, they contacted the clerk of courts' office and were told to appear at the mediation conference on December 2 and that Wilson was "M.I.A."

{¶ 12} Wilson did not appear at the mediation conference, and the court continued it to permit the Salzers to obtain new counsel. The Salzers then filed a grievance against Wilson, and he did not refund their $3,000 in fees until March 2019.

{¶ 13} The board found that this conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client), 1.5(b) (requiring an attorney to communicate the basis or rate of the fee and expenses within a reasonable time after commencing the representation), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the

lawyer only as fees are earned or expenses incurred), and 1.15(d) (requiring a lawyer to promptly deliver funds or other property that a client or a third party is entitled to receive).

*Count Three: The Heiney Matter*

{¶ 14} In June 2016, Ronald and Caitlyn Heiney hired Wilson to seek custody of Ronald's children. They paid him $2,000, but Wilson did not explain whether he was charging them a flat fee or an hourly rate nor did he have them sign a written fee agreement. One week later, the Heineys paid Wilson an additional $450 for filing fees. Wilson did not deposit either of the payments into his client trust account.

{¶ 15} In late June, Wilson filed a complaint on Ronald's behalf and paid $450 in filing fees, and in July, the court scheduled the matter for a hearing. The court granted two continuances of the hearing at the request of the children's mother. Although Caitlyn subsequently texted Wilson to check on the status of the case on two occasions, he did not respond.

{¶ 16} Early in November 2016, the Heineys received a letter from Wilson's office stating that Wilson was no longer practicing law and that they could retrieve their file from his office. The file contained documents that they had never seen before, including the complaint that Wilson had filed on their behalf. They filed a grievance against Wilson, but he did not refund their money until March 2019.

{¶ 17} The board found that this conduct violated Prof.Cond.R. 1.4(a)(4), 1.5(b), 1.15(c), and 1.15(d).

*Count Four: The Renter Matter*

{¶ 18} In March 2016, Kennyana Renter retained Wilson to obtain permanent custody of her grandchildren. She paid him $600 of his requested $1,500 fee and agreed to pay the remainder in monthly installments of $100.

Wilson did not deposit the $600 payment into his client trust account. Renter made five additional payments of $100 between May and September 2016.

{¶ 19} In April 2016, Wilson filed a complaint in Portage County, seeking temporary and permanent custody of the children on Renter's behalf. But on July 1, the court ruled that the case should have been filed in Cuyahoga County and dismissed it for lack of jurisdiction. Wilson did not refile the case.

{¶ 20} In November 2016, Renter received a letter stating that Wilson was no longer practicing law and that she could pick up her file at his office. She filed a grievance against Wilson in June 2017, but he did not refund her $1,100 payment until March 2019.

{¶ 21} The board found that this conduct violated Prof.Cond.R. 1.3, 1.15(c), and 1.15(d).

*Count Five: The Johnson Matter*

{¶ 22} In March 2016, Jordan Johnson retained Wilson to represent him in a child-custody matter and paid him $1,000 for his services. Later that month, Wilson filed a motion seeking reallocation of parental rights and responsibilities and other relief on Johnson's behalf. The parties reached an agreement at the trial on September 19, and the court ordered Wilson to submit an entry memorializing the agreement within 14 days. Wilson did not comply, and on November 3, the court issued a second order stating that if Wilson did not comply within ten days, it would schedule a sanction hearing. Wilson did not comply or appear at the sanction hearing.

{¶ 23} Johnson filed a grievance against Wilson in April 2017, and in February 2019, Wilson mailed Johnson a check for $250, as a partial refund. At the time of Wilson's disciplinary hearing, Johnson had not cashed the check. Wilson agreed that if Johnson contacted him in the future, he would make restitution in that amount, and relator agreed that Wilson does not owe any further restitution to Johnson.

**{¶ 24}** The board found that the above conduct violated Prof.Cond.R. 1.3 and 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal). In accord with the parties' stipulations, the panel unanimously dismissed one additional alleged violation with respect to this count. *See* Gov.Bar R. V(12)(G).

*Count Six: The Baker Matter*

**{¶ 25}** Wilson represented Keith Baker in his divorce. On April 27, 2016, Baker gave Wilson a $1,747.61 check representing a 2015 joint marital income-tax refund, which was to be held in Wilson's client trust account pending the conclusion of the divorce proceedings. Wilson deposited the check into his client trust account the same day. Pursuant to the final decree of divorce filed in July 2016, the tax refund was to be equally divided and distributed to Baker and his former wife, Joyce, but Wilson did not distribute the funds before closing his legal practice in October 2016.

**{¶ 26}** In December 2016, Wilson misappropriated the Bakers' funds by making several fund transfers from his client trust account to his personal and business accounts, reducing the balance to $129.09. In January 2018, the domestic-relations court accepted the Bakers' agreed judgment entry directing that the entire 2015 income-tax refund be paid to Joyce. At Wilson's direction, his former counsel distributed those funds to Joyce in March 2019.

**{¶ 27}** The board found that this conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property), 1.15(d), and 8.4(c).

*Count Seven: The Bennett Matter*

**{¶ 28}** In April 2016, Joshua Bennett retained Wilson to represent him in his divorce and Wilson quoted a fee of $2,000. In May 2016, Michelle Pignaloso made two $500 payments to Wilson on Bennett's behalf. Wilson filed a notice of appearance and multiple motions, including a motion to continue a pretrial

hearing and the trial and a motion for the appointment of a guardian ad litem ("GAL").

{¶ 29} Prior to a pretrial hearing on June 30, the parties agreed to the appointment of a GAL, and at the hearing, the magistrate ordered that each party deposit $400 toward the GAL's fee with the clerk of court. On July 8, Pignaloso paid Wilson another $1,400—the final $1,000 of his fee plus the $400 deposit for the GAL. Wilson did not deposit those funds into his client trust account or submit the GAL-fee deposit to the court.

{¶ 30} The parties settled the case, and the GAL applied for payment of his $1,331.25 fee. At an October 24 hearing, Wilson falsely stated that Bennett had paid the $400 deposit. He also authorized opposing counsel to pay the remainder of Bennett's share of the fee from Bennett's share of the parties' joint income-tax refund. Wilson subsequently closed his law practice but failed to inform Bennett that he was terminating his representation. Wilson did not review or approve the final divorce decree, leaving Bennett to sign it pro se.

{¶ 31} On October 27, opposing counsel sent the GAL a check for $931, representing the wife's $400 deposit and the balance of the GAL's fee. She also sent Wilson a check for $319, representing Bennett's share of the tax refund after deduction of the GAL's fee and back child support. Wilson did not forward the check to Bennett or deposit it into his client trust account, nor did he forward Bennett's $400 deposit to the GAL. At a December 28 hearing on the GAL's fee, Bennett stated that he had given the $400 deposit to Wilson. The GAL agreed to accept $200 as full satisfaction of his fee, and Bennett paid it that day.

{¶ 32} In March 2019, Wilson sent Bennett a check for $769—a $250 refund of his fee, $200 for the additional payment Bennett had made to the GAL, and Bennett's $319 share of the income-tax refund. The parties stipulated that no additional restitution was owed, but at the hearing, Wilson acknowledged that he

still owed Bennett $200 of his $400 GAL-fee deposit and agreed to pay it within a week.

{¶ 33} The board found that the above conduct violated Prof.Cond.R. 1.15(a), 1.15(d), 1.16(d) (requiring a lawyer withdrawing from a representation to take reasonably practical steps to protect a client's interests), 3.3(a)(1) (prohibiting a lawyer from making a false statement of fact or law to a tribunal), and 3.4(c).

**Sanction**

{¶ 34} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 35} Here, Wilson committed a felony with the intent to thwart or hamper the prosecution of a felony domestic-violence case and committed a series of ethical violations involving six other clients—some of which predated his criminal conduct. As aggravating factors, the parties stipulated and the board found that Wilson had a prior attorney-registration suspension, had engaged in a pattern of misconduct involving multiple offenses, and had harmed vulnerable clients. *See* Gov.Bar R. V(13)(B)(1), (3), (4), and (8). The board found that Wilson's conduct was egregious, had been undertaken for his own financial gain, and had resulted in the temporary filing of criminal charges against K.P. and the dismissal of a felony domestic-violence charge against K.R. *See* Gov.Bar R. V(13)(B)(2).

{¶ 36} As for mitigation, Wilson made a timely, good-faith effort to make restitution and to rectify the consequences of his misconduct, demonstrated a cooperative attitude toward the disciplinary process, and submitted several letters attesting to his good character and reputation. *See* Gov.Bar R. V(13)(C)(3), (4), and (5). He also satisfied criminal sanctions that had been imposed for some of

his misconduct and presented evidence of other interim rehabilitation, including his completion of an intensive outpatient treatment program for substance abuse, participation in mental-health counseling, and implementation of other positive lifestyle changes. *See* Gov.Bar R. V(13)(C)(6) and (8). Although Wilson presented some evidence of existing mental-health and substance-use disorders, he did not establish them as mitigating factors under Gov.Bar R. V(13)(C)(7).

{¶ 37} The parties recommend that Wilson be suspended from the practice of law for two years. Wilson requests that he receive credit for the time he has served under his interim felony suspension, and relator does not oppose that request. In support of their recommendation, the parties cited multiple decisions imposing two-year suspensions on attorneys with felony convictions comparable to Wilson's conviction for telecommunications fraud. *See, e.g., Disciplinary Counsel v. Blaszak*, 104 Ohio St.3d 330, 2004-Ohio-6593, 819 N.E.2d 689 (imposing a two-year suspension, with credit for time served under an interim felony suspension, on an attorney convicted of offering to sell truthful testimony); *Disciplinary Counsel v. Pappas*, 141 Ohio St.3d 1, 2014-Ohio-3676, 21 N.E.3d 260 (imposing a two-year suspension on an attorney who had been convicted of a felony for making false statements to federal authorities and who had also filed a false affidavit in court and made false statements to disciplinary authorities); *Disciplinary Counsel v. Lawrence*, 147 Ohio St.3d 315, 2016-Ohio-4605, 65 N.E.3d 711 (imposing a two-year suspension, with credit for time served under an interim suspension, on an attorney convicted of filing false federal income-tax returns). Like Wilson, both Blaszak and Pappas engaged in criminal conduct that was dishonest and prejudicial to the administration of justice. However, none of the attorneys in the cases cited by the parties engaged in criminal conduct *and* additional misconduct affecting multiple clients as Wilson did.

{¶ 38} In addition to the cases cited by the parties, the board also considered two cases in which we indefinitely suspended attorneys who, like

Wilson, had engaged in conduct that is prohibited by Prof.Cond.R. 8.4(b), 8.4(c), and 8.4(d).

{¶ 39} In *Disciplinary Counsel v. Cohen*, 142 Ohio St.3d 471, 2015-Ohio-2020, 32 N.E.3d 455, an attorney representing a defendant charged with murder spoke with a prosecution witness about purchasing bus fare to travel out of state and then gave the witness money. Cohen pleaded guilty to fourth-degree felony counts of attempted obstruction of justice and attempted tampering with evidence, was sentenced to 60 days of monitored house arrest and three years of community control, and was ordered to pay a $5,000 fine and perform 500 hours of community service. In the presence of four mitigating factors—namely, the absence of prior discipline, full and free disclosure to the board, evidence of good character and reputation, and imposition of other penalties for the misconduct—and the absence of any aggravating factors, we agreed that an indefinite suspension was the appropriate sanction for Cohen's misconduct. However, we declined to grant Cohen credit for the time he had served under an interim felony suspension. *Id.* at ¶ 9.

{¶ 40} Similarly, in *Disciplinary Counsel v. Young*, 102 Ohio St.3d 113, 2004-Ohio-1809, 807 N.E.2d 317, we indefinitely suspended an attorney who had pleaded guilty to conspiracy to obstruct justice for conspiring to pay a witness to fabricate a story that would falsely exonerate his client. Young also had solicited payments to ensure that another client—the victim of a crime—would be unavailable to testify at trial. Young had served ten months in prison, followed by five months in a halfway house and five months of electronically monitored home confinement; he also had been ordered to participate in a substance-abuse-treatment program.

{¶ 41} As aggravating factors, we found that Young previously had been disciplined by this court, engaged in a pattern of misconduct, and committed some of his misconduct while he was on probation. Although we acknowledged that

Young had abused alcohol and drugs during more than half of his professional career, we found that he had responded "to an astounding degree" to his court-ordered substance-abuse treatment program, had admitted that his conduct was wrong, and was working conscientiously as a paralegal at the time of his disciplinary hearing. *Id.* at ¶ 11. In light of Young's demonstrated progress and his ongoing efforts to rehabilitate himself, we indefinitely suspended him from the practice of law and ordered him to submit to additional monitoring by the Ohio Lawyers Assistance Program ("OLAP"). *Id*. at ¶ 17.

{¶ 42} Although Wilson's criminal conduct was accompanied by misconduct that was not present in *Cohen* or *Young*, the board recommends that we indefinitely suspend Wilson from the practice of law, grant him credit for the time he has served under his interim felony suspension, and order him to submit proof within 60 days that he has paid $200 in restitution to Joshua Bennett. The board also recommends that upon petitioning for reinstatement to the bar, Wilson be required to submit proof that he has complied with the contract he signed with OLAP on February 6, 2017, and the treatment recommendations of his qualified mental-health professional and that until that time, we reserve judgment on whether a monitor should be appointed. *See* Gov.Bar R. V(25)(F)(6) (permitting this court to make reinstatement subject to appropriate conditions, including a period of monitored probation). After reviewing the record and the relevant precedent, we adopt the board's recommended sanction.

## Conclusion

{¶ 43} Accordingly, Jared Lee Wilson is indefinitely suspended from the practice of law in Ohio with credit for the time he has served under the interim felony suspension imposed on December 7, 2017. Within 60 days, he shall submit proof to relator that he has made restitution of $200 to Joshua Bennett. Upon petitioning for reinstatement, he shall be required to submit proof that he has complied with his OLAP contract and the treatment recommendations of his

qualified mental-health professional, in addition to the requirements of Gov.Bar R. V(25). We reserve judgment as to monitored probation until we are presented with Wilson's petition for reinstatement. Costs are taxed to Wilson.

Judgment accordingly.

KENNEDY, FRENCH, DEWINE, and DONNELLY, JJ., concur.

O'CONNOR, C.J., and FISCHER and STEWART, JJ., would not grant credit for time served.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Tracey Ann Laslo, for respondent.

_____