[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Reed*, Slip Opinion No. 2023-Ohio-1420.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1420

DISCIPLINARY COUNSEL *v*. REED.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Reed*, Slip Opinion No. 2023-Ohio-1420.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct that adversely reflects on the lawyer's fitness to practice law, knowingly making a false statement of fact or law to a tribunal, and failing to act with reasonable diligence in representing a client—Indefinite suspension, with credit for time served under interim felony suspension, and restitution ordered.*

(No. 2022-0955—Submitted January 10, 2023—Decided May 2, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-027.

_____

**Per Curiam.**

{¶ 1} Respondent, Ryan Shane Reed, of Urbana, Ohio, Attorney Registration No. 0084670, was admitted to the practice of law in Ohio in 2009. On May 28, 2020, we entered an interim remedial order suspending Reed's license pursuant to Gov.Bar R. V(19). *Disciplinary Counsel v. Reed*, 161 Ohio St.3d 1223, 2020-Ohio-3113, 161 N.E.3d 726. On December 23, 2020, we suspended his license on an interim basis following his conviction on multiple felony counts. *See In re Reed*, 163 Ohio St.3d 1298, 2020-Ohio-6841, 171 N.E.3d 355. Those suspensions remain in effect.

{¶ 2} In a four-count complaint, relator, disciplinary counsel, charged Reed with 19 ethical violations—2 arising from his criminal convictions and the remaining 17 arising from misconduct related to his representation of three clients. The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors, and they submitted 90 stipulated exhibits. They also jointly recommended that Reed be indefinitely suspended from the practice of law with certain conditions on his reinstatement. Reed and two other witnesses testified at a hearing conducted by a three-member panel of the Board of Professional Conduct.

{¶ 3} The panel found that Reed had committed 16 of the stipulated rule violations. On relator's motion, the panel unanimously dismissed the three other alleged violations. After weighing the aggravating and mitigating factors and considering our precedent, the panel recommend that we indefinitely suspend Reed from the practice of law, credit him for 18 months of the time served under his interim felony suspension, and place certain conditions on his reinstatement to the profession. The board adopted the panel's report in its entirety and no objections have been filed.

{¶ 4} We adopt the board's findings of misconduct and the recommended sanction.

**MISCONDUCT**

**Count One: Reed's Criminal Convictions**

{¶ 5} In 2020, Reed's girlfriend, P.S., and her then eight-year-old daughter resided with Reed in his Urbana home. P.S. also worked as an administrative assistant in Reed's law office, which he operated out of his house.

{¶ 6} On May 5, 2020, P.S. found Reed "passed-out drunk" on the couch in his office. Later that day, she and Reed got into an argument, and Reed shoved her as she tried to enter her car. P.S. walked across the street to escape the assault. Sometime after P.S. left, Reed slashed two of the tires on her car. After returning the next morning, P.S. called the Urbana Police Department to file a report. She informed police that Reed was likely in court and that he was intoxicated.

{¶ 7} That morning, Reed had appeared for a final evidentiary hearing in a Champaign County domestic-relations matter. After the hearing, Urbana police officers arrested Reed in the courthouse. As the officers escorted Reed to their cruiser, Reed removed the mask he was wearing due to the COVID-19 pandemic, at which point the officers noted an odor of alcohol coming from his person. The arresting officers administered several field-sobriety tests, which Reed failed. Reed was charged with domestic violence and assault related to the incident with P.S. the previous day. And because Reed had driven to the courthouse that morning, the police also charged him with operating a vehicle under the influence of alcohol ("OVI"), a first-degree misdemeanor.

{¶ 8} Reed was arraigned around 8:30 a.m. on May 7. The judge issued a temporary protection order ("TPO") in favor of P.S. but gave Reed until noon that day to retrieve his belongings from his home.

{¶ 9} On May 14, despite the TPO, Reed returned to his home when P.S. and her daughter were present. He fled when P.S. called 911. That evening, when police questioned Reed over the telephone about his whereabouts that day, Reed denied that he had been in Urbana. At the officer's urging, Reed agreed to surrender

himself to authorities the next morning. Reed failed to do so, and a warrant was issued for his arrest.

{¶ 10} On May 16, Reed contacted P.S. by text message and telephone in violation of the TPO. Later that day, he crawled through a window of his home but fled when the police arrived. He was quickly apprehended and arrested—and found to be wearing a bulletproof vest.

{¶ 11} In early June, the Champaign County Grand Jury returned a nine-count indictment charging Reed with two felony counts of burglary, two felony counts of violating a protection order, two misdemeanor counts of violating a protection order, and one misdemeanor count each of OVI, domestic violence, and assault. On June 18, Reed was arraigned on those charges in Champaign C.P. No. 2020 CR 100. He posted bond and was released the same day.

{¶ 12} On June 22, Reed, while holding a knife, told his mother that he was going to his home to kill P.S. Reed's mother promptly informed Reed's behavioral-health counselor of the threat. Reed's counselor immediately alerted the police, and a high-speed chase ensued. During the chase, Reed drove his car at more than 99 m.p.h., lost control, and crashed into a tree. He was arrested at the scene with a blood-alcohol level of 0.17. Reed was arraigned on charges of failure to comply with an order or signal of a police officer, OVI, and inducing panic in Champaign C.P. No. 2020 CR 135. The court set bond at $150,000. The next day, the judge presiding over Reed's earlier criminal case revoked Reed's bond in that matter.

{¶ 13} In early July, the Champaign County Grand Jury returned a four-count indictment charging Reed with a felony count of failure to comply with an order or signal of a police officer, two misdemeanor counts of OVI, and a single misdemeanor count of inducing panic.

{¶ 14} In late October, Reed pleaded guilty to amended counts of attempted burglary (a third-degree felony), trespassing in a habitation (a fourth-degree felony), and domestic violence (a first-degree misdemeanor) in Champaign C.P.

No. 2020 CR 100. The state dismissed the six other counts in that case. In Champaign C.P. No. 2020 CR 135, Reed pleaded guilty to an amended count of attempted failure to comply with an order or signal of a police officer (a fourth-degree felony) and OVI (a first-degree misdemeanor). The state dismissed the two remaining counts.

{¶ 15} On December 3, 2020, the court sentenced Reed to 24 months in prison in Champaign C.P. No. 2020 CR 100 and 18 months in prison in Champaign C.P. No. 2020 CR 135, to be served concurrently, and imposed a three-year period of mandatory postrelease control for the attempted burglary offense.

{¶ 16} Reed stipulated and the board found that his conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board determined that the Prof.Cond.R. 8.4(h) violation captured Reed's convictions that fall outside the scope of Prof.Cond.R. 8.4(b) but nonetheless adversely reflect on his fitness to practice law. We find that his domestic-violence, attempted-failure-to-comply, and OVI convictions fall outside of the scope of Prof.Cond.R. 8.4(b) but are violations of Prof.Cond.R. 8.4(h). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21 (holding that a violation of Prof.Cond.R. 8.4(h) must be supported by clear and convincing evidence that the lawyer engaged in misconduct that while not specifically prohibited by the rules, nonetheless adversely reflects on the lawyer's fitness to practice law). We adopt these findings of misconduct.

### Count Two: The Thomas and Baker Matters

{¶ 17} On January 1, 2018, Brandon Thomas retained Reed and paid him $7,000 to represent him in a criminal matter. Reed did not deposit Thomas's payment into his client trust account. After Reed entered a notice of appearance

and waived the preliminary hearing, Thomas was released on bond and returned to his home in California. In late February 2018, the Miami County Grand Jury secretly indicted Thomas on five felony charges and a warrant was issued for his arrest. Thomas was arrested in California on the outstanding warrant in late June or early July 2019. After Thomas's arraignment, Reed filed a standard discovery request and a motion to modify travel restrictions included in Thomas's bond conditions so that he could return to his job in California; the bond motion was denied.

{¶ 18} Thomas had difficulty communicating with Reed regarding the status of his case. Consequently, he retained another attorney to serve as Reed's cocounsel. That attorney filed a notice of appearance in mid-January 2020, along with a renewed motion for modification of Thomas's travel restrictions. The court granted that motion six days later, and Thomas returned to California. At the end of January, the prosecutor informed Reed of the state's plea offer, which the prosecutor agreed to keep open through February 2020, but Reed did not communicate that offer to Thomas.

{¶ 19} After several continuances, the court set Thomas's case for a telephone status conference on May 7, 2020. Reed attended the arraignment in one of his own criminal cases earlier that morning and joined the status conference approximately 15 minutes late. The judge presiding over Thomas's case asked Reed if he had communicated the state's plea offer to Thomas. Reed told the judge that he had not spoken to Thomas because he "had no access to his client files due to a domestic violence situation with a protection order in place." However, that protection order had been issued just moments before Reed joined the status conference, and Reed had been aware of the plea offer for more than three months.

{¶ 20} The judge then asked Reed why he had failed to appear for a May 5 pretrial conference in the case of another client, Dameek Curry Baker, which was set for trial the following week. Reed stated that he did not appear because he "did

not have his client file," and that as a result, he also could not prepare for Baker's upcoming jury trial. But Reed has stipulated that he did not appear for that pretrial conference because he was "passed-out drunk." Moreover, the TPO issued against him gave him until noon that day to retrieve items from his home. Based in part on Reed's false representations to the court, the judge vacated Baker's impending trial date. After learning of Reed's interim remedial suspension, the judge appointed a public defender to represent Baker. Additionally, Thomas retained new lead counsel. Although Reed did not complete Thomas's representation, he kept the entire $7,000 fee.

{¶ 21} The parties stipulated and the board found that Reed's conduct violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt these findings of misconduct.

**Counts Three and Four: The Diehl and Kermode Matters**

{¶ 22} In March 2020, Stacy Diehl met with Reed and paid him a $2,450 flat fee to represent her in a divorce action and, according to Diehl, a related civil-protection-order ("CPO") proceeding. Reed did not deposit those funds into his client trust account. Over the next two weeks, Diehl was unable to reach Reed. He did not respond to an email about the CPO, and after he failed to attend a hearing on the matter, the court denied the CPO and dismissed the case.

{¶ 23} Reed filed a complaint initiating Diehl's divorce action in late May or early June 2020. But he failed to respond to several emails and a telephone call

from Diehl seeking information about her case, due in part to his arrest on June 22. After learning that Reed was in custody, Diehl terminated his representation and retained new counsel. Reed waited almost a year before he refunded Diehl's retainer, less $400 that he had deposited with the court for costs.

{¶ 24} In December 2019, Tina Kermode, a foster parent who was pursuing the adoption of four foster children, retained Reed to represent her on a child-endangering charge. She paid a flat fee of $1,500, but Reed did not deposit those funds into his client trust account. Although Reed advised Kermode that she would need to appear for her arraignment, he did not respond to her emails inquiring about her case. He met her at the courthouse shortly before her arraignment to introduce himself and spent approximately five minutes with her before she entered a not-guilty plea.

{¶ 25} Afraid that the children would be removed from her home, Kermode emailed Reed seeking reassurance and asking additional questions about her defense. Reed sent Kermode three emails, giving cursory answers to her questions and transmitting the discovery he had received from the prosecutor. Kermode then emailed Reed asking an additional question and attempting to schedule a time to speak with him before her next court appearance; Reed replied, stating that he would call her, but he failed to do so. Reed met with Kermode for approximately five minutes on the morning of her pretrial conference and advised her to enter a no-contest plea. Kermode followed his advice. The court found her guilty of the charged offense and scheduled a sentencing hearing.

{¶ 26} Kermode made numerous attempts to communicate with Reed after her foster-parent caseworker told her that a conviction for child endangering would disqualify her from serving as a foster parent and could be cause for removal of the children from her home. Unable to reach Reed, she terminated his representation and hired a new attorney. In early February, Reed told Kermode that he would withdraw from her case, but he waited nearly three weeks to do so.

{¶ 27} The court granted Kermode's motion to withdraw her plea, but she ultimately entered another no-contest plea to the same charge. Although Kermode was permitted to adopt the foster children who had been in her care, she had to relinquish her foster-parent license due to her conviction. Reed acknowledged that he owes Kermode a refund of $750 because he failed to complete his representation of her.

{¶ 28} The parties stipulated and the board found that Reed's conduct in the Diehl and Kermode matters violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information), 1.15(c), and 1.16(e), and that his conduct in the Diehl matter also violated Prof.Cond.R. 8.4(d). We adopt these findings of misconduct.

## RECOMMENDED SANCTION

{¶ 29} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 30} The parties stipulated and the board found that four aggravating factors are present in this case: Reed acted with a dishonest or selfish motive, committed multiple offenses, harmed vulnerable clients, and failed to make restitution to Thomas and Kermode. *See* Gov.Bar R. V(13)(B)(2), (4), (8), and (9). The parties also stipulated to four mitigating factors—namely, that Reed made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, presented evidence of his good character and reputation, had other penalties or sanctions imposed for his misconduct, and presented evidence of other interim rehabilitation related to his diagnosed mental and alcohol-use disorders. *See* Gov.Bar R. V(13)(C)(4), (5), (6), and (8).

**{¶ 31}** The board adopted the parties' stipulated mitigating factors and noted that the testimony of Reed and his counselor established that Reed had been diagnosed with generalized anxiety disorder and a severe alcohol-use disorder that was in sustained remission (with the qualifier that Reed's remission had been in a controlled environment). Reed presented evidence that he regularly attends Alcoholics Anonymous ("AA") meetings and counseling sessions, has entered into a contract with the Ohio Lawyers Assistance Program ("OLAP"), has been sober since his incarceration began in June 2020, and is firmly committed to recovery. Although Reed testified that his alcoholism affected every aspect of his life, he did not sufficiently establish that it contributed to his misconduct. Consequently, the board did not find his diagnosed mental and substance-use disorders to be a mitigating factor. *See* Gov.Bar R. V(13)(C)(7). It did, however, attribute mitigating effect to Reed's clean disciplinary record, *see* Gov.Bar R. V(13)(C)(1), and noted that Reed accepted full responsibility for his actions.

**{¶ 32}** The parties jointly recommended that Reed be indefinitely suspended from the practice of law and that he not be permitted to apply for reinstatement until he has completed the postrelease control imposed in his criminal cases and made full restitution of $4,000 to Thomas and $750 to Kermode. The parties also recommend that we place conditions on Reed's reinstatement to ensure that he continues to comply with his treatment regimen and is mentally fit to resume the practice of law. In addition, they agree that Reed should receive some credit for the time served under his interim felony suspension.

**{¶ 33}** In determining the appropriate sanction to recommend for Reed's misconduct, the board relied on three cases in which we imposed indefinite suspensions with similar conditions for reinstatement on attorneys who committed crimes and engaged in professional misconduct while abusing alcohol.

**{¶ 34}** In *Disciplinary Counsel v. Deters*, 155 Ohio St.3d 478, 2018-Ohio-5025, 122 N.E.3d 159, an attorney was convicted of misdemeanor counts of

10

maintaining physical control of a vehicle while under the influence, excessive speed, improperly handling a firearm in a motor vehicle, assault, obstructing official business, and twice violating a domestic-violence CPO that had been issued in favor of his estranged wife, *id*. at ¶ 7-10. Deters also accepted fees but failed to complete the work in 18 cases, failed to inform many of his clients of his incarceration, failed to return their telephone calls, and failed to file two appellate briefs, which resulted in the dismissal of one client's case. *Id.* at ¶ 12, 15, 17. As a result of Deters's failure to appear at scheduled hearings, warrants were issued for two of his clients and he was found in contempt of court. *Id.* at ¶ 6, 12. At the time of his disciplinary hearing, Deters owed an aggregate amount of roughly $29,000 in restitution to his former clients. *Id*. at ¶ 24.

{¶ 35} Three aggravating factors were present—Deters engaged in a pattern of misconduct, committed multiple offenses, and harmed vulnerable clients. *Id*. at ¶ 20. The only mitigating factors were Deters's cooperation in the disciplinary proceedings and the imposition of other sanctions. *Id*. at ¶ 21. Although Deters had been diagnosed with alcohol and substance-use disorders and an underlying mental disorder, he made no claim that they qualified as a mitigating factor under Gov.Bar R. V(13)(C)(7). *Id*. at ¶ 22. We indefinitely suspended Deters from the practice of law, ordered him to make restitution to 14 clients, and imposed conditions on his reinstatement requiring that he comply with his OLAP contract and receive a prognosis from a qualified healthcare professional of his ability to return to the competent, ethical, and professional practice of law. *Id.* at ¶ 23-25.

{¶ 36} In *Disciplinary Counsel v. Tinch*, 160 Ohio St.3d 165, 2020-Ohio-2991, 154 N.E.3d 78, we imposed a similar sanction on an attorney who committed 71 violations of the Rules of Professional Conduct arising from his criminal conduct and his professional misconduct in 12 separate client matters. *Id.* at ¶ 2, 6, 9-11. In contrast to Reed, Tinch established the existence of a mitigating substance-use disorder, *id*. at ¶ 15, but he also had an interim default suspension imposed for

his failure to respond to the disciplinary proceedings, *id*. at ¶ 2. His eventual cooperation was tempered by his failure to accept responsibility and his lack of remorse for the harm he had caused to his clients. *Id.* at ¶ 14-15. We indefinitely suspended Tinch and afforded him no credit for the time served under his interim remedial and default suspensions. *Id*. at ¶ 20.

**{¶ 37}** Finally, in *Disciplinary Counsel v. Wilson*, 160 Ohio St.3d 528, 2020-Ohio-3050, 159 N.E.3d 1141, an attorney committed a felony "with the intent to thwart or hamper the prosecution of a felony domestic-violence case" that was pending against the partner of Wilson's former secretary. *Id.* at ¶ 35. He also committed a series of ethical violations with respect to eight clients, which included the neglect of client legal matters, the failure to reasonably communicate with clients, a false statement made to a tribunal, the failure to deposit unearned fees into a client trust account, and the failure to promptly refund unearned fees. *Id.* at ¶ 13, 17, 24, 26, 33. At the time of his disciplinary hearing, Wilson owed just $200 in restitution to one client. *Id*. at ¶ 32.

**{¶ 38}** The aggravating and mitigating factors in *Wilson* were comparable to those present in this case, *id*. at ¶ 35-36, and like Reed, Wilson failed to establish his existing mental-health and substance-use disorders as mitigating factors, *id*. at ¶ 36. We indefinitely suspended Wilson from the practice of law, credited him for the time served under his interim felony suspension, which by then had exceeded two years, and imposed treatment-centered conditions on his reinstatement. *Id*. at ¶ 43.

**{¶ 39}** After considering Reed's misconduct, the applicable aggravating and mitigating factors, and the sanctions imposed in *Deters*, *Tinch*, and *Wilson*, the board concluded that an indefinite suspension coupled with an order of restitution and the parties' proposed conditions for reinstatement is the appropriate sanction for Reed's misconduct. Citing the condition that Reed not be permitted to petition for reinstatement until he has successfully completed his term of postrelease

control, his genuine remorse and acceptance of responsibility for his wrongdoing, and his commitment to his treatment program, the board recommends that he receive credit for 18 months of the time he has served under his interim felony suspension. Having reviewed the record in this case and our precedent, we agree with the board's recommendation.

## CONCLUSION

{¶ 40} Accordingly, Ryan Shane Reed is indefinitely suspended from the practice of law in Ohio and ordered to make restitution of $4,000 to Brandon Thomas and $750 to Tina Kermode within 90 days of this order. He shall receive 18 months' credit for the time served under his interim felony suspension, but he shall not be eligible to petition for reinstatement until he successfully completes any terms of postrelease control imposed in relation to his convictions in *State v. Reed*, Champaign C.P. Nos. 2020 CR 100 and 2020 CR 135 (Dec. 4, 2020). In addition to the requirements of Gov.Bar R. V(25), Reed's reinstatement shall be conditioned on proof of (1) his compliance with his May 31, 2022 OLAP contract, (2) his continued participation in AA, and (3) his continued treatment with Journey 4 Self, L.L.C., or another provider approved by OLAP. Reed shall also be required to submit an opinion from his treatment provider stating that he is able to return to the competent, ethical, and professional practice of law. Costs are taxed to Reed.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

––––––––––––––––––

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Coughlan Law Firm, L.L.C., and Jonathan E. Coughlan, for respondent.

––––––––––––––––––