**In the Matter of Robert E. HUGHES.**

**No. 29S00–9305–DI–509.**

Supreme Court of Indiana.

Oct. 13, 1994.

Disbarment ordered.

Duge Butler, Jr., Butler Brown & Blythe, Indianapolis, for respondent.

Donna McCoy Spear, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

### PER CURIAM.

The Disciplinary Commission has charged Respondent Robert E. Hughes with four counts of lawyer misconduct emanating from several fraudulent claims Respondent submitted to the Hamilton County Clerk–Treasurer while Respondent was judge of the Carmel (Ind.) City Court. This Court suspended Respondent *pendente lite,* pursuant to Ind.Admission and Discipline Rule 23(11), on March 11, 1994. The Hearing Officer in this matter, appointed pursuant to Admis.Disc.R. 23(11), has tendered his findings of fact and conclusions of law, in which he found misconduct, but declined to recommend a specific sanction. Neither party has petitioned this Court for review of that report, and this matter is now before us for final resolution.

We accept and adopt the Hearing Officer's findings [1] and conclusions. Accordingly, we now find that Respondent was admitted to the Bar of this state on December 5, 1956, and is therefore subject to this Court's disciplinary jurisdiction. At all times relevant to this action, Respondent was serving as the duly-elected judge of the Carmel City Court in Hamilton County, Indiana. He also maintained a private law practice. Under Count I, we find that on August 15, 1990, Respondent attended a conference sponsored by the National Council of Juvenile and Family Court Judges. There was no tuition charged for attending the conference. On December 17, 1990, Respondent knowingly submitted a fraudulent receipt, along with a claim form, to the Carmel Clerk–Treasurer ("Clerk–Treasurer"). The claim requested reimbursement of two hundred dollars ($200.00) for the alleged cost of attending the conference. Respondent negotiated a $200.00 reimbursement check he received from the Clerk–Treasurer.

Under Count II, we now find that on September 5, 1991, Respondent attended an Indiana law update seminar sponsored by the Indiana Continuing Legal Education Forum ("ICLEF"). Respondent paid ICLEF one-hundred and forty-seven dollars ($147.00) for attending the conference, and obtained a receipt for this payment. The cost of $147.00 represented a fifty percent discount, offered to members of the judiciary. On October 21, 1991, Respondent submitted a claim to the Clerk–Treasurer for reimbursement of the seminar expense. In that claim, Respondent sought reimbursement of two-hundred and ninety-four dollars ($294.00), apparently representing the cost of the seminar without discount. On October 23, 1991, the Clerk–Treasurer paid Respondent $294.00 for his fraudulent claim.

Under Count III, we now find that on December 16, 1991, Respondent submitted a claim to the Clerk–Treasurer requesting reimbursement for eight-hundred and ten dollars ($810.00), purportedly for "travel and seminars." Respondent included a receipt for five hundred twenty-four dollars ($524.00), which alleged it was from the "Southeastern Conference Traffic Enforcement." Respondent submitted the claim and receipt in an attempt to convince the Clerk–Treasurer that he had attended a continuing legal education seminar in Myrtle Beach, South Carolina on November 25 and 26, 1991. In fact, Respondent attended no such seminar, as no such seminar ever occurred, and thus Respondent had to resort to creation of a bogus receipt to support the claim. The Clerk–Treasurer subsequently issued Respondent a check for $810.00 for these fraudulent claims.

---

1. The Hearing Officer's findings incorporate the Respondent's and Commission's stipulated facts.

Pursuant to Count IV, we now find that on October 5, 1992, Respondent submitted a claim for nine hundred forty-five dollars ($945.00) to the Clerk–Treasurer, purportedly for expenses incurred while attending a conference sponsored by the National Judicial College and held in Montana in August, 1992. In fact, Respondent did not attend this conference. No such conference was ever conducted. Respondent attached a fraudulent receipt to the claim. Although the receipt indicated that it was from the National Judicial College, Respondent had actually created it.

On March 2, 1993, Respondent was charged in Hamilton Superior Court 4 with three counts of theft (each a Class D felony) and one count of official misconduct (a Class A misdemeanor) in relation to the above-described actions. He relinquished his position as judge, and on February 1, 1994 plead guilty to all charges. Judgment of conviction was entered, and thereafter Respondent was sentenced under alternative misdemeanor sentencing guidelines, pursuant to I.C. 35–50–2–7. He received four one-year sentences of incarceration in the Hamilton County Jail, with the sentences to run concurrently. The sentences were suspended, and Respondent was placed on probation for one year. By court order, he is prohibited from holding public office of trust or profit for five years, pursuant to I.C. 35–50–5–1.1.

We find that the stipulated facts clearly and convincingly establish that Respondent violated Rule 8.4(b) of the *Rules of Professional Conduct for Attorneys at Law* by committing criminal acts that reflect adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects. The facts also establish that Respondent violated Ind.Professional Conduct Rule 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation.

Having found misconduct, we must now assess an appropriate disciplinary response. The Hearing Officer found several factors tending to mitigate the severity of Respondent's acts. Among them was information provided by the character witnesses who appeared on Respondent's behalf. Most of their testimony centered on Respondent's good reputation, record of honesty and integrity, the respect he had received for his work on the bench, and general untarnished record. The Hearing Officer also noted that Respondent told friends and colleagues that he was remorseful for his misconduct. Respondent testified that his health deteriorated due to the stresses involved in trying to balance his judicial duties and private law practice. He became depressed, and sought consultation with Dr. Ned P. Masbaum around Christmas, 1992. After several sessions, Dr. Masbaum concluded that Respondent suffered no neurological impairment, but did diagnose Respondent as experiencing bipolar disorder, mixed with depression. Additionally, Dr. Masbaum reported that Respondent "express[ed] guilt and remorse and ... was self-depreciatory." Respondent was subsequently treated and showed good response. Respondent testified that he had no financial motivation for submitting the fraudulent claims, although he did admit to certain investment problems. Before the criminal charges were filed, Respondent provided restitution to Hamilton County in the amount of $1,013.00.

Though this Court considers the mitigating factors presented, they cannot overshadow Respondent's egregious misconduct. His acts encompass a myriad of grave departures from the behavior expected of lawyers, especially those who have chosen to serve in public office as judges. He engaged in dishonest acts rising to the level of felonious conduct. He has violated the public's trust. Such actions, when taken by a judge, likely tend to injure the public's confidence in the judiciary. Where those whose job it is to enforce the law break it instead, the public rightfully questions whether the system itself is worthy of respect. *In re Oliver*, (1986), Ind., 493 N.E.2d 1237, 1242. Although are mindful of the stresses that perhaps precipitated Respondent's fragile mental condition, the fact remains that Respondent consciously chose to engage in dishonest, deceitful, and criminal conduct. Theft, by its very nature, reflects adversely on one's honesty, integrity, trustworthiness, and fitness as a lawyer. It suggests character defects that are incompatible with the duties expected of an attorney.

Further, we would be remiss in our duty to safeguard the integrity of the profession if we allowed Respondent to continue in practice. In examining fitness to practice law, this Court exercises its duty to assure the public that those who hold licenses to provide service can be trusted to do so in a competent way. *In re Gutman,* (1992), Ind., 599 N.E.2d 604, 607. We consider whether an attorney can be trusted to keep his client's secrets, give effective legal advice, fulfill his obligations to the courts, and so on. *Id.*

In light of all the above considerations, we conclude that it is appropriate here to impose the strongest disciplinary sanction. It is, therefore, ordered that Respondent, Robert E. Hughes, is hereby disbarred.

Costs of this proceeding are assessed against Respondent.