[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hunter*, Slip Opinion No. 2023-Ohio-4168.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4168

DISCIPLINARY COUNSEL *v*. HUNTER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hunter*, Slip Opinion No. 2023-Ohio-4168.]

*Judges—Misconduct—Felony conviction—Violations of Code of Judicial Conduct, including permitting family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment—Indefinite suspension, with credit for time served under interim felony suspension.*

(No. 2023-0472—Submitted June 28, 2023—Decided November 21, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-037.

_____

DONNELLY, J.

{¶ 1} Respondent, Tracie M. Hunter, of Cincinnati, Ohio, Attorney Registration No. 0061225, was admitted to the practice of law in Ohio in 1993. She

served as a judge of the Hamilton County Court of Common Pleas, Juvenile Division, from May 2012 until January 2014, when she was indicted by a Hamilton County grand jury.

{¶ 2} Hunter's indictment was based on conduct that she had allegedly undertaken in her role as a juvenile-court judge. On October 14, 2014, a jury returned a guilty verdict on a single count of having an unlawful interest in a public contract in violation of R.C. 2921.42(A)(1), a fourth-degree felony. The court sentenced Hunter to six months in jail followed by one year of nonreporting probation and ordered her to pay the court costs.

{¶ 3} On October 21, 2014, we suspended Hunter from the practice of law on an interim basis based on her felony conviction. *See In re Hunter*, 141 Ohio St.3d 1212, 2014-Ohio-4667, 21 N.E.3d 1070. That suspension remains in effect.

{¶ 4} After Hunter's state appellate and federal habeas corpus efforts to overturn her conviction failed, relator, disciplinary counsel, filed a complaint in August 2022 alleging that the conduct underlying Hunter's criminal conviction violated five rules of the Code of Judicial Conduct. Following a hearing, a three-member panel of the Board of Professional Conduct issued a report in which it found that Hunter had committed the charged misconduct and recommended that Hunter be indefinitely suspended from the practice of law with credit for the time she had served under her interim felony suspension. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 5} Hunter objects to the board's report and recommendation and asks that the complaint be dismissed, that the board's findings and recommendations be set aside, and that she be immediately reinstated to the practice of law. For the reasons that follow, we overrule Hunter's objections and adopt the board's findings of misconduct and aggravating and mitigating factors and its recommended sanction.

## I. MISCONDUCT

### A. The Board's Findings of Misconduct

{¶ 6} The facts underlying Hunter's conviction are set forth in the opinion of the First District Court of Appeals affirming that conviction. The court of appeals stated:

> The [state] alleged that [Judge] Hunter had an unlawful interest in a public contract, in violation of R.C. 2921.42(A)(1). According to the testimony presented during trial, the charge stemmed from the termination proceedings against [Stephen] Hunter, an employee of the Hamilton County Juvenile Court's Youth Center ("Youth Center") and Hunter's brother.
>
> [Stephen] Hunter was employed as a juvenile corrections officer. On July 7, 2013, [Stephen] Hunter was involved in an incident in which he was alleged to have hit a youth in the intake department of the detention center. As a result of that incident, Dwayne Bowman, the superintendent of the Youth Center, recommended that the court terminate [Stephen] Hunter and that a hearing be scheduled for that purpose.
>
> [Stephen] Hunter was informed of the decision on July 25, 2013. Shortly after 10:30 that evening, [Judge] Hunter sent an email to all employees of the Youth Center in which she identified a number of safety concerns, which she said had been brought to her attention as a result of an email she had sent out previously. She said that she would schedule a closed meeting to discuss the issues with the corrections officers.
>
> Bowman testified that the email was troubling. He said that he was concerned that the email "would cause confusion with the

staff at the youth center. Mr. Hunter's termination process was still occurring and [he believed] that it could jeopardize that process." Bowman noted that many of the items on [Judge] Hunter's list echoed the main explanations that [Stephen] Hunter had given for his actions during the July 7 incident, suggesting that the email was Hunter's way of inserting herself into the proceedings. Brian Bell, assistant superintendent of the Youth Center, had similar concerns, testifying that he felt that "she was going to speak to the residents about it to conduct basically her own investigation."

On July 29, 2013, Hunter sent an email to Bowman in which she requested that he send her a number of documents [concerning the youth her brother had allegedly struck]. The email demanded "copies of all incident reports related to [the youth] and any and all JCOs [junior correctional officers] involving [the youth] and other staff, prior or subsequent to alleged incident with JCO Hunter.

"All incidents reported during any time frame that [the youth] was detained at the Youth Center, shall be included.

"Please provide copies of all drug tests performed of [the youth] during all times at Youth Center. Medical reports of any positive drug tests shall also be included, including the substances detected.

"Please forward all copies of all incidents reported involving [the youth] with police."

Bowman replied by asking [Judge] Hunter if she wanted only the incident reports, or if she also wanted "other documents related to [the] investigation." Bowman testified that he had asked that clarifying question because Hunter was requesting documentation that was "above and beyond the information that we

would normally provide to someone not directly involved in the investigation or someone from the investigative team." He was concerned at that point and was "trying to protect the integrity of the disciplinary process, of the investigation, * * * and also to give the judge the opportunity to clarify that she was not asking for that kind of information, but just the information of the incident." Rather than restraining her query, Hunter replied that she wanted "all documentation of every incident and every employee pertaining to [the youth] during his stay at the Youth Center * * *."

Bowman testified that this exchange was very stressful for him. He said that he was greatly concerned because "[i]t was something that [he] had not experienced before for a judge to be directly involved in an incident there at the Youth Center. Certainly the fact that this was the brother of the judge." Likewise, Bell testified that he had never seen a judge directly involved in the disciplinary process of a Youth Center employee. According to Bell, the types of documents provided to [Judge] Hunter would not have been provided to an employee under any circumstances.

Bowman provided the documents to [Judge] Hunter that day. [Stephen] Hunter testified that [Judge] Hunter then provided the documents to him, which he in turn brought to his attorney that evening. His attorney testified that she only accepted some of the documents. His attorney testified that she refused to accept some of the documents because it would have been "unethical" for her to take them and that she was "concerned that [she] might have to make an ethical report to the Supreme Court about the person that gave him" the documents.

The next morning, [Stephen] Hunter appeared with his attorney for the hearing. Bell testified that, under normal circumstances, the first hearing is continued because the employee receives his discovery packet at the first hearing and usually requires time to review the documents. [Stephen] Hunter's counsel was able to proceed with the hearing that day, which concluded after several hours. [Stephen] Hunter was eventually terminated.

(Ellipses sic.) *State v. Hunter*, 1st Dist. Hamilton Nos. C-140684, C-140704, and C-140717, 2016-Ohio-123, ¶ 4-12.

{¶ 7} Hunter sought discretionary review of the court of appeals' judgment in this court. On her motion, we stayed the execution of that judgment pending our decision, 144 Ohio St.3d 1465, 2016-Ohio-209, 44 N.E.3d 292, but in May 2016, we declined to accept jurisdiction over her appeal, *see* 145 Ohio St.3d 1470, 2016-Ohio-3028, 49 N.E.3d 1313.

{¶ 8} Shortly thereafter, Hunter filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio and obtained an emergency stay of the execution of her sentence. In her petition, she alleged several violations of her constitutional rights during her trial arising from alleged prosecutorial misconduct, the trial court's jury-polling procedure, and the accelerated calendaring of her appeal.

{¶ 9} In May 2017, a federal magistrate issued a report recommending that Hunter's habeas corpus petition be denied with prejudice. Hunter objected to the magistrate's report. In May 2019, the federal district court overruled Hunter's objections, denied her habeas corpus petition, and vacated the stay of execution of her sentence. *Hunter v. Hamilton Cty. Court of Common Pleas*, S.D. Ohio No. 1:16-cv-561, 2019 WL 2281542 (May 29, 2019).

{¶ 10} Hunter appealed that judgment to the United States Court of Appeals for the Sixth Circuit. On July 22, 2019, the Hamilton County Court of Common Pleas ordered that Hunter's sentence be executed. She served her jail sentence and was discharged from probation in July 2020. In January 2022, the Sixth Circuit affirmed the judgment of the district court denying Hunter's habeas corpus petition. *Hunter v. Ohio Atty. Gen.*, 6th Cir. Nos. 19-3515 and 19-3550, 2022 WL 154341 (Jan. 18, 2022). Seven months later, relator filed this disciplinary case.

{¶ 11} At the panel hearing, relator called Hunter to testify on cross-examination and introduced 15 exhibits. Hunter presented testimony from five witnesses.

{¶ 12} Hunter contended that the criminal charges against her were politically motivated because she was the first black Democrat elected as a judge of the Hamilton County Juvenile Court and sought to implement change. Hunter and her witnesses offered testimony that Hunter had actively worked to reform the court's procedures and operations and implement improvements in the juvenile-detention facility.

{¶ 13} Hunter agreed that she was convicted of the fourth-degree felony offense of having an unlawful interest in a public contract under R.C. 2921.42(A)(1). But she maintained that the evidence presented at her trial did not warrant a conviction under the language of that statute.

{¶ 14} The board found that the evidence adduced at Hunter's disciplinary hearing clearly and convincingly demonstrated that Hunter's conduct violated Jud.Cond.R. 1.1 (requiring a judge to comply with the law), 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary), 1.3 (prohibiting a judge from abusing the prestige of judicial office to advance the personal or economic interests of the judge or others), 2.4(B) (prohibiting a judge from permitting family, social, political, financial, or other interests or relationships to influence the judge's

judicial conduct or judgment), and 3.5 (prohibiting a judge from knowingly disclosing or using nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's judicial duties).

### B. Hunter's Objections to the Proceedings Before the Board

{¶ 15} In her objections to the board's report, Hunter asserts that she was denied due process of law in four respects: relator's formal complaint was both unduly delayed and premature, relator denied her discovery request, the panel excluded her exhibits at the hearing, and the panel denied her request for an extension of time to retain new counsel and file a posthearing brief. We are not persuaded by these arguments.

{¶ 16} A disciplinary proceeding is neither a criminal nor a civil proceeding, and consequently, the standards of due process for attorney- and judicial-discipline proceedings are not the same as those in criminal matters. *In re Judicial Campaign Complaint Against Carr*, 76 Ohio St.3d 320, 322, 667 N.E.2d 956 (1996). We have held that due-process rights in disciplinary proceedings have been adequately protected when the respondent has been " 'afforded a hearing, the right to issue subpoenas and depose witnesses, and an opportunity for preparation to explain the circumstances surrounding his actions.' " *Disciplinary Counsel v. Tamburrino*, 151 Ohio St.3d 148, 2016-Ohio-8014, 87 N.E.3d 158, ¶ 21, quoting *Disciplinary Counsel v. Character*, 129 Ohio St.3d 60, 2011-Ohio-2902, 950 N.E.2d 177, ¶ 76.

{¶ 17} Hunter's first argument that relator deprived her of due process is that relator filed his complaint at an improper time. Hunter takes issue with relator's failure to file the disciplinary complaint when her direct appeal concluded with our denial of discretionary jurisdiction in May 2016. Under Gov.Bar R. V(18)(C), relator was prohibited from bringing a disciplinary proceeding against Hunter to hearing until all direct appeals from her conviction were concluded. Hunter's criminal sentence had been stayed and was not executed until July 2019.

Her case remained incomplete and active until the Sixth Circuit affirmed the federal district court's decision denying her habeas corpus petition in January 2022. Therefore, we cannot fault relator for waiting until August 2022 to bring disciplinary charges against Hunter.

{¶ 18} Hunter also faults relator for filing the complaint before the trial court ruled on her 2019 motion for leave to file a delayed petition for postconviction relief. Yet Hunter cites no legal rule or precedent that would require relator to delay the filing of Hunter's disciplinary complaint until every proceeding related to her underlying conviction has been resolved. On these facts, we find that Hunter's first argument has no merit.

{¶ 19} In her second due-process argument, Hunter asserts that relator withheld exculpatory evidence and refused to provide Hunter with copies of certain of her 2013 emails. Hunter claims that she sought relator's help in obtaining her juvenile-court emails because the prosecutor had unlawfully withheld them in her criminal case. However, there is no evidence in the record to demonstrate that Hunter requested discovery or filed a formal request for the production of documents pursuant to Civ.R. 34 or that she filed a motion for an order to compel discovery pursuant to Civ.R. 37. Therefore, we find that Hunter's second argument is without merit.

{¶ 20} Third, Hunter argues that the panel deprived her of her right to defend herself against relator's complaint by strategically and improperly excluding all her exhibits from evidence. The day before the hearing, the panel chair issued an order excluding five of Hunter's exhibits that were offered for the purpose of contesting the validity of her criminal conviction. The panel chair noted that three other exhibits that Hunter submitted also would be inadmissible for that purpose, but the chair reserved ruling on their admissibility in the event that Hunter offered them for another purpose (e.g., in mitigation or as a defense to an element of an alleged rule violation requiring proof beyond the existence of Hunter's felony

conviction). Hunter did not attempt to offer any of those exhibits as evidence during her disciplinary hearing. Thus, her claim that the panel deprived her of a fair hearing by excluding *all* her exhibits is without merit.

{¶ 21} Hunter's fourth argument—that she was denied the right to file a posthearing brief after her attorney sought to withdraw as her counsel on the morning that her closing argument was due—is likewise without merit. Hunter asserts that the 14-day period that the panel chair granted her to find new counsel and file a posthearing brief was insufficient. In this case, Hunter has been afforded a hearing, the right to issue subpoenas and depose witnesses, and the opportunity to explain the circumstances surrounding her actions. The board also gave her eight weeks to file a posthearing brief. Gov.Bar R. V confers no right on any party to file a closing brief before the board. Moreover, this court, not the panel or the board, is the final arbiter of attorney discipline. *See Cincinnati Bar Assn. v. Heitzler*, 32 Ohio St.2d 214, 220, 291 N.E.2d 477 (1972). For these reasons and because Hunter has availed herself of the opportunity to raise her objections to the board's report and recommendation in this proceeding before we make a final determination in her case, we cannot find that her right to due process has been infringed.

{¶ 22} Accordingly, we overrule Hunter's objections to the proceedings before the board.

### C. Hunter's Objection to the Board's Findings of Misconduct

{¶ 23} In her next objection, Hunter raises several arguments that her criminal conviction was unjust and cannot form a proper basis for any finding that she has engaged in judicial misconduct.

{¶ 24} A certified copy of Hunter's December 19, 2014 entry of conviction on a single count of having an unlawful interest in a public contract in violation of

R.C. 2921.42(A)(1)[1] was admitted into evidence during Hunter's disciplinary hearing. We are bound by Gov.Bar R. V(18)(B), which provides: "A certified copy of the entry of conviction of an offense * * * shall be conclusive evidence of the commission of that offense * * * in any disciplinary proceedings instituted against a judicial officer or an attorney based upon the conviction * * *." Consequently, we have held that "a disciplinary proceeding is not an appropriate forum in which to collaterally attack a criminal conviction." *Greater Cleveland Bar Assn. v. Chvosta*, 62 Ohio St.2d 429, 430, 406 N.E.2d 524 (1980). Hunter cannot challenge the fact of her criminal conviction in this disciplinary proceeding. We therefore overrule her objection to the board's findings of misconduct.

{¶ 25} The board correctly determined that Hunter's felony conviction conclusively demonstrates that she violated Jud.Cond.R. 1.1 by engaging in conduct that violated the law. That criminal conviction combined with the facts acknowledged by the First District Court of Appeals in that case also clearly and convincingly support the board's conclusions about the remaining four rule violations.

{¶ 26} The court of appeals' recitation of the evidence presented at Hunter's trial demonstrates that upon being informed of the potential termination of her brother's employment, Hunter sent an email to all employees of the Hamilton County Juvenile Court Youth Center identifying numerous safety concerns that resembled the main explanations her brother had given for his actions that were under investigation. *Hunter*, 2016-Ohio-123 at ¶ 7. Hunter requested many documents—including some that "would not have been provided to any employee

---

1. R.C. 2921.42(A)(1) prohibits a public official from "[a]uthoriz[ing] or employ[ing] the authority or influence of the public official's office to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest."

under any circumstances," *id.* at ¶ 10—and her brother testified that she provided those nonpublic documents to him and that he took them to his attorney, *id*. at ¶ 11.

{¶ 27} Those facts support the board's inference that Hunter acted to protect her brother's job and that her actions in that regard violated her duty under Jud.Cond.R. 1.2 to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary. They also support the board's conclusion that she abused the prestige of her judicial office to advance the personal or economic interests of her brother in violation of Jud.Cond.R. 1.3, that she permitted her familial relationship with her brother to influence her judicial conduct in violation of Jud.Cond.R. 2.4(B), and that she knowingly disclosed nonpublic information acquired in her judicial capacity for a purpose unrelated to her judicial duties in violation of Jud.Cond.R. 3.5. We therefore adopt the board's findings of misconduct.

## II. SANCTION

### A. The Board's Recommended Sanction

{¶ 28} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 29} In this case, the board found two aggravating factors. First, Hunter engaged in her criminal conduct relative to her brother's employment with the juvenile court and that she therefore acted with a selfish motive. *See* Gov.Bar R. V(13)(B)(2). The board also found that Hunter refused to acknowledge the wrongful nature of her conduct. *See* Gov.Bar R. (V)(13)(B)(7). Although it acknowledged that Hunter's refusal was grounded in her sincere belief that her conduct did not violate the plain language of R.C. 2921.42(A)(1), the board nonetheless found that her failure to acknowledge any wrongdoing after exhausting her direct appeals, combined with her expressed intention to pursue additional

collateral attacks on her criminal conviction, constitutes an aggravating factor. *See Disciplinary Counsel v. Doumbas*, 149 Ohio St.3d 628, 2017-Ohio-550, 76 N.E.3d 1185, ¶ 11 (attributing aggravating effect to an attorney's failure to acknowledge the wrongfulness of his conduct when at the time of his disciplinary proceeding he had exhausted direct appeals and expressed an intention to continue collaterally attacking his criminal conviction).

{¶ 30} The board also found three mitigating factors. First, Hunter had no prior discipline. *See* Gov.Bar R. V(13)(C)(1). She also presented extensive testimony and evidence regarding her good character and reputation, which included her work as a community and child advocate, her role as a church pastor and her leadership positions in a multistate church conference, and her efforts to implement changes to protect the rights and dignity of the children served by the juvenile court. *See* Gov.Bar R. V(13)(C)(5). Finally, the board found that Hunter had had other penalties and sanctions imposed for her misconduct, including the loss of her judgeship, a jail sentence, an order to pay more than $17,000 in court costs, and her nearly nine-year interim felony suspension. *See* Gov.Bar R. V(13)(C)(6).

{¶ 31} In determining the appropriate sanction for Hunter's misconduct, the board noted that in every reported case in which a sitting judge has been convicted of a felony, this court has either permanently disbarred or indefinitely suspended the judge. However, the board found that Hunter's misconduct was significantly less egregious than the misconduct of others who were disbarred for felony offenses that they committed while serving as judges. *See Disciplinary Counsel v. Terry*, 147 Ohio St.3d 169, 2016-Ohio-563, 63 N.E.3d 88 (the respondent had been convicted of felony counts of conspiracy to commit mail fraud and honest-services mail fraud for providing judicial favors in exchange for contributions to his election campaign); *Disciplinary Counsel v. McAuliffe*, 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209 (the respondent had been convicted of felony counts of mail

fraud, use of fire to commit mail fraud, conspiracy to use fire to commit mail fraud, and money laundering for burning down his house in order to defraud an insurance company); *Disciplinary Counsel v. Gallagher*, 82 Ohio St.3d 51, 693 N.E.2d 1078 (1998) (respondent had been convicted of a single felony count of distributing cocaine). Recognizing that Hunter's misconduct arose from a relatively brief, isolated incident, the board recommends that we adopt relator's proposed sanction of an indefinite suspension from the practice of law with credit for the significant time that Hunter has served under her interim felony suspension.

### B. Hunter's Objections to the Board's Recommended Sanction

{¶ 32} Hunter challenges the aggravating factors found by the board and the board's recommendation that she be indefinitely suspended from the practice of law. Hunter asserts that she could not have acted with a selfish motive as found by the board because she received no personal benefit or economic inurement and she did not secure a public contract or anything of value for her brother. As the board found, however, engaging in misconduct to protect a friend has been found to constitute a selfish motive. *See Disciplinary Counsel v. Pappas*, 141 Ohio St.3d 1, 2014-Ohio-3676, 21 N.E.3d 260, ¶ 14 (attorney made false averments of law-firm ownership in an effort to quash a subpoena for a friend's financial records in the friend's divorce proceeding). Although Hunter may not have personally benefitted from her misconduct, she was convicted of a felony by employing the power of her judicial office in an attempt to help her brother keep his public employment when it was jeopardized. Therefore, the board properly found that Hunter had acted with a selfish motive to protect a family member.

{¶ 33} Hunter also challenges the board's finding that she refused to acknowledge the wrongful nature of her conduct. Specifically, Hunter challenges the board's reliance on *Doumbas*, 149 Ohio St.3d 628, 2017-Ohio-550, 76 N.E.3d 1185, ¶ 11 for the proposition that an expressed intention to continue collaterally attacking a criminal conviction after exhausting appeals can support a finding that

a respondent has failed to acknowledge the wrongful nature of his or her conduct. She attempts to distinguish the facts of this case from those in *Doumbas* on the ground that she had a collateral attack of her criminal conviction *pending* at the time relator filed his complaint and that she should not be forced to confess to a crime that she did not commit. She argues that in the interest of justice, relator should have waited until that postconviction proceeding concluded to initiate this disciplinary proceeding.

{¶ 34} Nevertheless, Hunter had no direct appeal pending when relator filed his complaint. Rather, Hunter had filed only a motion for leave to file a delayed petition for postconviction relief and/or a motion for relief from judgment. "[A] postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment." *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). Furthermore, we have already found that Gov.Bar R. V(18)(C) authorized relator to bring disciplinary proceedings against Hunter once all her direct appeals were concluded. We used that same reasoning to deny a stay pending the resolution of a collateral proceeding to vacate, set aside, or correct McAuliffe's criminal sentence filed after McAuliffe's disciplinary hearing but before this court decided his disciplinary case. *See McAuliffe*, 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.3d 1209, ¶ 8, 13-17. We therefore overrule Hunter's objection to the board's finding that she refused to acknowledge the wrongfulness of her conduct.

{¶ 35} In her final objection, Hunter argues that the board's recommended sanction of an indefinite suspension is a de facto disbarment. And she claims that rather than compare her case to others in which judges and lawyers were convicted of the same offense, the board erroneously compared the facts of her case to others in which judges committed far worse crimes that involved personal economic benefit or serious harm to victims. For the reasons that follow, we overrule Hunter's objection and adopt the board's recommended sanction.

**{¶ 36}** As the board noted, our jurisprudence does not contain any cases in which a judge was convicted of *any* felony and received a disciplinary sanction less than an indefinite suspension or permanent disbarment. The board did compare the facts of Hunter's case to others involving more egregious misconduct—*Terry*, *McAuliffe*, and *Gallagher*—but those comparison cases all involved the more severe sanction of disbarment and were used to illustrate why disbarment is not appropriate in Hunter's case.

**{¶ 37}** Hunter asserts that her conduct is more appropriately compared to the conduct at issue in *Disciplinary Counsel v. Schmidt*, 134 Ohio St.3d 557, 2012-Ohio-5712, 983 N.E.2d 1310. Schmidt pleaded guilty to several misdemeanor charges for conduct related to the private law practice he maintained while serving as the Greene County treasurer. *Id*. at ¶ 10. For example, he violated R.C. 2921.42(A) for accepting a nominal fee from the probate court's guardian account for serving as a guardian for indigent and mentally-ill persons in need of legal representation. *Id*. at ¶ 4. He also violated R.C. 2921.43(A)(1) (soliciting or receiving improper compensation) for charging law firms for real-property title reports that included tax information that he was required to maintain in his role as the county treasurer. *Id*. at ¶ 6. We determined that Schmidt's conduct adversely reflected on his fitness to practice law and imposed a 12-month conditionally stayed suspension for his offense. *Id*. at ¶ 11, 18.

**{¶ 38}** However, Schmidt's conduct is readily distinguishable from Hunter's because Schmidt was not a judge and his criminal offenses were not felonies. "An independent and honorable judiciary is indispensable to justice in our society." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 33. Therefore, we have stated that "[j]udges are subject to the highest standard of ethical conduct." *Gallagher*, 82 Ohio St.3d at 52, 693 N.E.2d 1078, citing *Mahoning Cty. Bar Assn. v. Franko*, 169 Ohio St. 17, 23, 151 N.E.2d 17 (1958).

{¶ 39} We acknowledge that the misconduct for which Hunter was convicted does not rise to the level of misconduct that we found warranted permanent disbarment in *Terry*, *McAuliffe*, and *Gallagher*. But given that Hunter's conviction under R.C. 2921.42(A)(1) arose from conduct that she undertook in her role as a judge, it is far more significant than an attorney's violation of the same statute in *Schmidt*. Based on Hunter's criminal conviction and the factual findings set forth in the court of appeals' opinion affirming that conviction, Hunter has been found to have violated the law, abused the prestige of her judicial office to advance the personal interests of another, allowed a familial relationship to influence her judicial conduct or judgment, and disclosed or used nonpublic information acquired in her judicial capacity for her brother's benefit, and she has thereby failed to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary. On these facts, we are not persuaded by Hunter's arguments that she should receive any sanction less than an indefinite suspension.

{¶ 40} Finally, we recognize that Hunter has served nearly nine years under her interim felony suspension. Given that an attorney or judge who has been indefinitely suspended from the practice of law may ordinarily petition this court for reinstatement after just two years, *see* Gov.Bar R. V(25)(A), we agree that the board's recommended sanction of an indefinite suspension with credit for the time that Hunter has served under her interim felony suspension is the appropriate sanction in this case. Because Hunter will be eligible to petition this court for reinstatement immediately upon the issuance of our decision and order in this case, this sanction cannot be considered a de facto disbarment.

### III. CONCLUSION

{¶ 41} Tracie M. Hunter's objections are overruled, and she is indefinitely suspended from the practice of law in Ohio with credit for the time she has served

under the interim felony suspension imposed on October 21, 2014. Costs are taxed to Hunter.

Judgment accordingly.

KENNEDY, C.J., and GALLAGHER and STEWART, JJ., concur.

FISCHER, J., concurs in part and dissents in part, with an opinion joined by LEWIS, J.

BRUNNER, J., not participating.

SEAN C. GALLAGHER, J., of the Eighth District Court of Appeals, sitting for DEWINE, J.

RONALD C. LEWIS, J., of the Second District Court of Appeals, sitting for DETERS, J.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 42} I agree with the majority opinion that respondent, former Hamilton County Juvenile Court judge Tracie M. Hunter, violated five rules of the Code of Judicial Conduct through conduct that led to her conviction for a fourth-degree felony offense of having an unlawful interest in a public contract. I also agree with the majority opinion's adoption of the Board of Professional Conduct's recommendation that we indefinitely suspend Hunter from the practice of law; however, I disagree with the majority's decision to give Hunter credit for the time that she has served under her interim felony suspension. Hunter committed a felony offense, acted with a selfish motive, and has taken no responsibility for her actions—she has consistently and unfairly blamed others for her prosecution and hardships. This court should indefinitely suspend Hunter from the practice of law *with no credit* for the time she has already served. Thus, I respectfully concur in part and dissent in part.

18

**Disbarment is generally the appropriate sanction for a judge who has been convicted of a felony offense**

{¶ 43} "[J]udges are held to the highest possible standard of ethical conduct." *Ohio State Bar Assn. v. McCafferty*, 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521, ¶ 16. "The primary purposes of judicial discipline are to protect the public, to guarantee the evenhanded administration of justice, and to bolster public confidence in the institution." *Id.* at ¶ 20.

{¶ 44} Although we decide disciplinary matters on a case-by-case basis, we review similar disciplinary cases to determine the appropriate sanction. *Disciplinary Counsel v. Gallagher*, 82 Ohio St.3d 51, 52, 693 N.E.2d 1078 (1998). When a judge commits a felony offense while in office, disbarment is not an uncommon sanction. *See, e.g.*, *id.* (judge disbarred after a felony conviction for distributing cocaine); *Disciplinary Counsel v. Mosely*, 69 Ohio St.3d 401, 632 N.E.2d 1287 (1994) (judge disbarred after felony convictions for interfering with commerce by extortion); *see also In re Hughes*, 640 N.E.2d 1065 (Ind.1994) (judge disbarred following felony convictions for theft). A majority of this court determines that Hunter's misconduct does not rise to a level that warrants disbarment. While I agree with the majority's conclusion, I must emphasize that for me, it is a really close call.

{¶ 45} We have disbarred a number of judges for conduct that resulted in felony convictions. In *Mosely*, this court disbarred a municipal-court judge who had been convicted of six felony counts of interference with commerce by extortion for conspiring to use his judicial position to unlawfully obtain property. *Id.* at 402-403. In *Gallagher*, this court disbarred a common-pleas-court judge who had pleaded guilty to one felony count of distributing cocaine. *Id.* at 51, 53. In *Disciplinary Counsel v. McAuliffe*, 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209, this court disbarred a municipal-court judge who had been convicted of several felonies: two counts of mail fraud, one count of use of fire to commit

mail fraud, one count of conspiracy to use fire to commit mail fraud, and two counts of money laundering. *Id.* at ¶ 1-2. And in *Disciplinary Counsel v. Terry*, 147 Ohio St.3d 169, 2016-Ohio-563, 63 N.E.3d 88, this court disbarred a common-pleas-court judge who had been convicted of multiple felonies: one count of conspiracy to commit mail fraud and two counts of honest-services mail fraud in connection with his judicial duties. *Id.* at ¶ 1, 18.

{¶ 46} There have been very few cases in this state in which a judge who has been convicted of a felony offense has not been disbarred, and among the cases in which we indefinitely suspended the judge, I find none in which this court gave credit for the time already served under the interim felony suspension. When this court has indefinitely suspended from the practice of law judges who were convicted of felony offenses, we have not given them credit for the time they had already served. *See, e.g.*, *Disciplinary Counsel v. Crane*, 56 Ohio St.3d 38, 38-39, 564 N.E.2d 96 (1990); *McCafferty*, 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521, at ¶ 26. It is unclear why this court decided to indefinitely suspend Crane rather than disbar her other than that decision's being consistent with the board's recommendation. *Crane* at 39. In *McCafferty*, this court determined that McCafferty's conduct required a severe sanction because she had lied to the FBI, but we determined that her conduct did not require the severest sanction of disbarment, because she had not engaged in a pattern of premeditated criminal conduct. *Id.* at ¶ 24. But in *McCafferty*, three members of this court voted *for* disbarment because McCafferty had been convicted of a felony offense. *Id.* at ¶ 27-28 (Lanzinger, J., dissenting).

{¶ 47} The board determined that Hunter's conduct was less egregious than the conduct in cases in which this court had disbarred an attorney, because Hunter's conduct was related solely to the matter of her brother's employment with the juvenile court and took place within a relatively short amount of time—it was not part of an ongoing course of conduct. While Hunter's misconduct may have been

committed within a short time frame, Hunter took several steps, utilizing her position as a judge, to aid her brother. Furthermore, Hunter, through her misconduct, violated five rules of the Code of Judicial Conduct, including Jud.Cond.R. 1.3 (prohibiting a judge from abusing the prestige of judicial office to advance the personal or economic interests of the judge or others), 2.4(B) (prohibiting a judge from permitting family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment), and 3.5 (prohibiting a judge from knowingly disclosing or using nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's judicial duties). The abuse of her position in office for the benefit of her brother may have occurred only once, but once is enough. *See McCafferty* at ¶ 29, 32 (Lanzinger, J., dissenting) (judge should have been disbarred because she had used or intended to use her influence over cases in her courtroom to advance the interests of local officials and a businessman).

**{¶ 48}** And while I acknowledge that Hunter has had no prior discipline, has presented extensive testimony of her good character and reputation, and has had other penalties and sanctions imposed for her misconduct, these mitigating factors deserve little weight in our analysis. *See Gallagher*, 82 Ohio St.3d at 53, 693 N.E.2d 1078 (mitigating factors have little relevance when judges engage in illegal conduct involving moral turpitude); *see also Hughes*, 640 N.E.2d at 1067 (Ind.1994) (when a judge has committed a felony offense and has thereby violated the public's trust, mitigating factors cannot overshadow such egregious conduct). Mitigating factors cannot overshadow felonious conduct by a judge, because such conduct violates the public's trust and injures the public's confidence in the judiciary. "Where those whose job it is to enforce the law break it instead, the public rightfully questions whether the system itself is worthy of respect." *Hughes* at 1067.

{¶ 49} Furthermore, Hunter has unequivocally expressed to this court through her brief and at oral argument that she does not acknowledge any wrongdoing and instead blames this court, the board, disciplinary counsel, and other legal professionals for her legal situation. Hunter takes on the role of victim, alleging that "the Ohio Supreme Court, in concert with the Hamilton County Prosecutor's Office, and Ohio and Hamilton County Republican Parties" have used "unprecedented legal intervention and aggressive intimidation" to try to prevent Hunter from becoming a Hamilton County Juvenile Court judge. Hunter maintains that her case "exposes that the Ohio Supreme Court operates a clandestine, arbitrary system of discipline and applies different standards of law and ethics, depending on the ethnicity and political affiliation of the accused." Hunter further expresses that the board "hypocritically and discriminatorily allows members of the bar with powerful family members, political connections and money [who] openly violate the Ohio Rules of Professional Conduct and the Ohio Code of Judicial Conduct to avoid discipline and escape prosecution, but targets lawyers that report and expose them for removal." She asserts that her case reveals "two systems of justice," one for her and one for "the elite." During her oral argument, Hunter alleged that disciplinary counsel acted hypocritically in charging her with violations of the Code of Judicial Conduct after she was convicted of a fourth-degree felony offense but not charging other members of the bench who she believes have also committed wrongdoing but who have never been charged with crimes. Hunter believes that her case demonstrates that the entirety of the legal system is colluding against her. But this assertion could not be further from the truth.

{¶ 50} While Hunter claims that she is "innocent" of the crime she was found guilty of committing, she does not deny taking some of the actions that led to her conviction. Rather, Hunter frames her conduct as performing her "legal and ethical obligation to investigate all employee incidents that impacted her court" and maintains that she was unable to perform that duty properly because she was denied

22

access to judicial training before taking office—even though she admits that she received judicial training well before the incident in question occurred. But the fact of the matter is that after a five-week jury trial, a jury found that Hunter had committed a fourth-degree felony of having an unlawful interest in a public contract. And Hunter's challenges to her conviction have failed in the First District Court of Appeals, this court, in a United States District Court, and the United States Court of Appeals for the Sixth Circuit. *State v. Hunter*, 1st Dist. Hamilton Nos. C-140684, C-140704, and C-140717, 2016-Ohio-123, ¶ 38 (Hunter's conviction was supported by sufficient evidence); *State v. Hunter*, 145 Ohio St.3d 1470, 2016-Ohio-3028, 49 N.E.3d 1313 (discretionary appeal not accepted); *Hunter v. Hamilton Cty. Court of Common Pleas*, S.D.Ohio No. 1:16-cv-561, 2019 WL 2281542, *11 (the evidence at trial "strongly supports the jury's verdict that Hunter was guilty of having an unlawful interest in a public contract"); *Hunter v. Ohio Atty. Gen.*, 6th Cir. Nos. 19-3515 and 19-3550, 2022 WL 154341, *6 (Jan. 18, 2022) (affirming district court's denial of Hunter's habeas corpus petition). While Hunter claims that her conviction is the result of a vendetta against her, she cannot deny and we cannot ignore that a 12-person jury, three appellate-court judges, one federal magistrate, and one federal district-court judge have upheld Hunter's conviction based on the evidence presented against her. While Hunter is certainly free to believe that she committed no wrongdoing, she cannot deny that all minds that have reviewed the evidence in her case disagree.

{¶ 51} It would be one thing if Hunter simply declared her innocence or her belief that she did not commit a crime and acknowledged that the system of justice (a system through which she has exhausted most if not all of her legal remedies and a system that she swore to uphold as a lawyer and as a judge) disagrees with her interpretation of the facts of her case, her reading of the criminal statute, and her overall analysis of her legal situation. But Hunter has not simply maintained her innocence; rather, she has smeared the names of various lawyers and judges in the

process. Whether another judge or lawyer has committed wrongdoing outside of her case has no relevance in the determination whether Hunter herself has committed wrongdoing. As the saying goes, two wrongs do not make a right. Hunter has accepted no responsibility for her actions and in explaining to this court why she is not responsible, she has shown an unprecedented lack of respect for this court, disciplinary counsel, the board, and other legal professionals. Hunter's refusal to acknowledge the wrongful nature of her conduct is an aggravating factor that should weigh heavily against her.

**{¶ 52}** Hunter's case differs only slightly from those in which we disbarred judges from the practice of law. *See, e.g.*, *Gallagher*, 82 Ohio St.3d 51, 693 N.E.2d 1078. And Hunter's case is hardly distinguishable from *Crane*, 56 Ohio St.3d 38, 564 N.E.2d 96, or *McCafferty*, 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521, in which we ordered indefinite suspensions with no credit for the time already served. For this court to be consistent with the disciplinary sanctions it has previously imposed on judges who have been convicted of felony offenses while in office, it must impose on Hunter an indefinite suspension with no credit for the time she has already served under the interim felony suspension.

**Conclusion**

**{¶ 53}** "When a judge's felonious conduct brings disrepute to the judicial system, the institution is irreparably harmed." *Gallagher* at 53. In sanctioning a judge who has been convicted of a felony offense, we aim to protect the public and the integrity of our judicial system. *Id.* Judges who commit such offenses deserve "the full measure of our disciplinary authority." *Id.*

**{¶ 54}** Hunter was convicted of a felony offense, acted with a selfish motive, and has taken no responsibility for her actions and continues to blame others for her legal situation. While Hunter has presented evidence to support several mitigating factors, those factors should be given little weight in our analysis, since Hunter committed the felony offense while serving as a judge and the offense

was a significant misuse of power. In this case, we should impose upon Hunter an indefinite suspension from the practice of law with no credit for time already served. Because the majority's judgment imposes a lesser sanction, I respectfully dissent in part.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Tracie M. Hunter, pro se.

_____